MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
By: TOMOKO ONOZAWA
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-2721
Facsimile: (212) 637-2686
Email: tomoko.onozawa@usdoj.gov

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x
                                    :
UNITED STATES OF AMERICA,           :
                                    :
           Plaintiff,               :      DEFAULT JUDGMENT
                                    :      OF FORECLOSURE AND SALE
      v.                            :
                                    :      08 Civ. 4112 (WCC)
MICHAEL LANOS, JESSICA LANOS,       :
THE COUNTY OF ORANGE, JOHN DOES     :
NOS. 1-10 and JANE DOES NOS. 1-10,  :
                                    :
           Defendants.              :
                                    :
- - - - - - - - - - - - - - - - - -x

This action having been commenced on May 1, 2008, by the filing of a complaint and issuance of a summons; defendant Michael Lanos, was personally served with a copy of the summons, complaint, notice of pendency and required notices regarding electronic case filing on May 13, 2008; defendant Jessica Lanos was served with a copy of the summons, complaint, notice of pendency and required notices regarding electronic case filing on May 13, 2008, by delivery to Michael Lanos, a person of suitable age and discretion; defendant The County of Orange was served with a copy of the summons, complaint, notice of pendency and required notices regarding electronic case filing on May 13,

2008, by delivery to John Ebert, an individual authorized to accept service of process on defendant The County of Orange; defendants Michael Lanos, Jessica Lanos, and The County of Orange not having answered or made any motion with respect to the complaint, and the time for defendants to answer or make any motion with respect to the complaint having expired; the Clerk of this Court having duly entered the certification of default; and sufficient proof having been adduced that none of the defendants is in the military of the United States or an infant or incompetent person,

NOW on the application of Michael J. Garcia, United States Attorney for the Southern District of New York, attorney for the plaintiff United States of America (the "plaintiff" or the "United States"), it is hereby

ORDERED AND ADJUDGED, that as of July 8, 2008, there is due and owing to the plaintiff the principal amount of $149,850,59, plus accrued interest in the amount of $11,060.20, plus advances in the amount of $4,690.91, plus $116.91 interest on the advances, $11,515.44 for interest credit assistance and $91.05 in uncollected late charges.  The total amount of the debt as of July 8, 2008, is $177,324.80.  Interest continues to accrue on the note account at a daily rate of $24.633 and on the advance account at a daily rate of $0.696, for a total rate of $25.329 per day until the date of entry of judgment; and it is further

ORDERED AND ADJUDGED, that plaintiff's mortgage is hereby foreclosed and that the mortgaged premises described by metes and bounds on the Real Estate Mortgage recorded on March 24, 2005, in the Orange County Clerk's Office, in Liber No. 11788 of Mortgages at Page 1408 ("the Mortgage") shall be sold free and clear of all rights, title and interest of each and all of the defendants named in this action and all persons claiming under them or after the filing of the notice of pendency in this action in the office of the County Clerk, Orange County under Index Number 2008-005219 and subject to any statement of facts that an accurate survey or a personal inspection of the premises would disclose, zoning ordinances, regulations of various governmental authorities having jurisdiction over the premises, assessments, water and sewer charges and covenants and restrictions of record, in one parcel, at public auction, to be held in the lobby of the Supreme Court, Orange County Government Center, 255-275 Main Street, Goshen, New York, in accordance with the rules and practices of this Court and the provisions of 28 U.S.C. §§ 2001 and 2002, under the direction of the United States Marshal for the Southern District of New York, or his representative; and it is further

ORDERED AND ADJUDGED, that the United States Marshal for the Southern District of New York, or his representative, shall execute and deliver to the purchaser a deed of the premises

sold upon the purchaser having complied with the terms of sale, and that the proceeds of such sale shall be deposited with the Clerk of this Court and paid out by the Clerk in the order set forth below and until the proceeds are exhausted:

(1) To the liens of taxing authorities entitled to priority, if any;

(2) To the United States Marshal for the Southern District of New York, the costs and expenses incurred by him in connection with the sale of the premises;

(3) To the plaintiff, United States of America, the costs and disbursements of this action, together with (a) an additional allowance of $150.00 pursuant to CPLR § 8302(b); (b) an allowance of $50.00 pursuant to CPLR § 8302(d); and (c) a discretionary allowance of $300.00 pursuant to CPLR § 8303(a)(1);

(4) To the plaintiff, United States of America, the sum of $177,324.80, which includes advances and interest accrued thereon through July 8, 2008, plus pre-judgment interest which continues to accrue on said sum at the rate of $25.329 per day to the date of entry of this judgment; and

(5) the balance, if any, shall be surplus money and shall be disposed of pursuant to a surplus money proceeding, upon such terms as this Court directs;

and it is further

ORDERED AND ADJUDGED, that the plaintiff, acting through the United States Department of Agriculture, may bid on the mortgaged premises at the sale and, in the event that it is the highest bidder, the United States Marshal for the Southern District of New York shall not require the plaintiff to pay in cash the amount bid at the sale, but shall execute and deliver to plaintiff a deed to the premises sold; and it is further

ORDERED AND ADJUDGED, that the United States Marshal for the Southern District of New York shall promptly file his report of the sale with the Clerk of this Court; and it is further

ORDERED AND ADJUDGED, that the purchaser at the sale shall have the right to possession of the premises upon production of the Marshal's deed; and it is further

ORDERED AND ADJUDGED, that upon the sale of the mortgaged premises, each and all of the defendants in this action and all persons claiming under any of the defendants, after the filing of the notice of pendency in this action are hereby forever barred and foreclosed of all right, title, claim, lien, interest and equity of redemption in and to the mortgaged premises, and in and to each and every part thereof; and it is further

ORDERED AND ADJUDGED, that the mortgaged premises affected by this Order and Judgment and to be sold by the United

5

States Marshal for the Southern District of New York, or his representative, are described by metes and bounds on the Mortgage recorded in the Orange County Clerk's Office on March 24, 2005, a copy of which is annexed as Exhibit A; and it is further

ORDERED AND ADJUDGED, that the Defendants captioned as "JOHN DOES NOS. 1-10" and "JANE DOES NOS. 1-10," not having been served with copies of the summons and complaint, are not necessary party defendants, and their names hereby are stricken from all the proceedings and papers hereafter to be filed herein, all without prejudice to this action; and it is further

ORDERED AND ADJUDGED, that the Clerk of this Court is directed to enter judgment forthwith and to close the case.

Dated:   White Plains, New York
         July    , 2008

                                          _____
                                          WILLIAM C. CONNER
                                          United States District Judge

Judgment entered this
    day of July, 2008

        Clerk

6

Case 7:08-cv-04112-WCC    Document 9    Filed 08/04/2008    Page 7 of 17

Exhibit A

JUL 05 2005

# ORANGE COUNTY CLERK'S OFFICE RECORDING PAGE
THIS PAGE IS PART OF THE INSTRUMENT -- DO NOT REMOVE

TYPE IN BLACK INK:
NAME(S) OF PARTY(S) TO DOCUMENT

| Michael Lanos and Jessica Lanos |
| TO |
| The United States of America acting through the Rural Housing Service |

SECTION  6   BLOCK  11   LOT  6 & 7

RECORD AND RETURN TO:
(name and address)

Rural Development
Attn: Loan Processing Center
441 South Salina Street
Suite 357
Syracuse, NY 13202-2541

Omega Title Services          (845) 355-2121
PO Box 172                    (845) 355-2124
Slate Hill, NY 10973

MGD4799

*THIS IS PAGE ONE OF THE RECORDING*

**ATTACH THIS SHEET TO THE FIRST PAGE OF EACH RECORDED INSTRUMENT ONLY**

## DO NOT WRITE BELOW THIS LINE

**INSTRUMENT TYPE:** DEED____ MORTGAGE ✓ SATISFACTION____ ASSIGNMENT____ OTHER____

## PROPERTY LOCATION

| | | | | |
|---|---|---|---|---|
| ____2089 | BLOOMING GROVE (TN) | ____4289 | MONTGOMERY (TN) | NO PAGES 10 CROSS REF.____ |
| ____2001 | WASHINGTONVILLE (VLG) | ____4201 | MAYBROOK (VLG) | CERT.COPY____ ADD'L X-REF.____ |
| ____2289 | CHESTER (TN) | ____4203 | MONTGOMERY (VLG) | MAP#____ PGS.____ |
| ____2201 | CHESTER (VLG) | ____4205 | WALDEN (VLG) | |
| ____2489 | CORNWALL (TN) | ____4489 | MOUNT HOPE (TN) | PAYMENT TYPE: CHECK ✓ |
| ____2401 | CORNWALL (VLG) | ____4401 | OTISVILLE (VLG) | CASH____ |
| ____2600 | CRAWFORD (TN) | ____4600 | NEWBURGH (TN) | CHARGE____ |
| ____2800 | DEERPARK (TN) | ____4800 | NEW WINDSOR (TN) | NO FEE____ |
| ____3089 | GOSHEN (TN) | ____5089 | TUXEDO (TN) | Taxable |
| ____3001 | GOSHEN (VLG) | ____5001 | TUXEDO PARK (VLG) | CONSIDERATION $____ |
| ____3003 | FLORIDA (VLG) | ____5200 | WALLKILL (TN) | TAX EXEMPT____ |
| ____3005 | CHESTER (VLG) | ____5489 | WARWICK (TN) | Taxable |
| ____3200 | GREENVILLE (TN) | ____5401 | FLORIDA (VLG) | MORTGAGE AMT. $ 163,400 |
| ____3489 | HAMPTONBURGH (TN) | ____5403 | GREENWOOD LAKE (VLG) | DATE____ |
| ____3401 | MAYBROOK (VLG) | ____5405 | WARWICK (VLG) | |
| ____3689 | HIGHLANDS (TN) | ____5600 | WAWAYANDA (TN) | **MORTGAGE TAX TYPE:** |
| ____3601 | HIGHLAND FALLS (VLG) | ____5889 | WOODBURY (TN) | ____ (A) COMMERCIAL/FULL 1% |
| ____3889 | MINISINK (TN) | ____5801 | HARRIMAN (VLG) | ____ (B) 1 OR 2 FAMILY |
| ____3801 | UNIONVILLE (VLG) | | | ____ (C) UNDER $10,000 |
| ____4089 | MONROE (TN) | | **CITIES** | ✓ (E) EXEMPT |
| ____4001 | MONROE (VLG) | ____0900 | MIDDLETOWN | ____ (F) 3 TO 6 UNITS |
| ____4003 | HARRIMAN (VLG) | ____1100 | NEWBURGH | ____ (I) NAT.PERSON/CR. UNION |
| ____4005 | KIRYAS JOEL (VLG) | ____1300 | PORT JERVIS | ____ (J) NAT.PER-CR.UN/1 OR 2 |
| | | | | ____ (K) CONDO |
| | | ____9999 | HOLD | |

*signature*
**DONNA L. BENSON**
ORANGE COUNTY CLERK

RECEIVED FROM: *Omega*

```
RECORDED/FILED
03/24/2005/   13:19:25
County Clerk
DONNA L. BENSON
ORANGE COUNTY, NY

FILE # 200500322400
MORT/BK 11788 PG 1408
SER# CV030638 MTAX 0.00
BASIC 0.00
MTA 0.00
SPECIAL 0.00
SPECIAL ASST 0.00
RECORDING FEES 55.00
Receipt#396816 frances
```

RECORD & RETURN TO:

USDA Rural Development
Attn: Loan Processing Center
441 South Salina Street, Suite 357
Syracuse, New York  13202-2541

Form RD 3550-14 NY
(Rev. 6-03)

(Space Above This Line For Recording Data)

**United States Department of Agriculture
Rural Housing Service**

Form Approved
OMB No. 0575-0172

# MORTGAGE FOR NEW YORK

THIS MORTGAGE ("Security Instrument") is made on    March 16th, 2005 .    . [Date]
The mortgagor is    MICHAEL LANOS and JESSICA LANOS
                                                                              ("Borrower").
This Security Instrument is given to the United States of America acting through the Rural Housing Service or successor agency, United States Department of Agriculture ("Lender"), whose address is Rural Housing Service, c/o Centralized Servicing Center, United States Department of Agriculture, P.O. Box 66889, St. Louis, Missouri 63166.

Borrower is indebted to Lender under the following promissory notes and/or assumption agreements (herein collectively called "Note") which have been executed or assumed by Borrower and which provide for monthly payments, with the full debt, if not paid earlier, due and payable on the maturity date:

| Date of Instrument | Principal Amount | Maturity Date |
|---|---|---|
| March 16th, 2005 | $163,400.00 | March 16th, 2043 |

This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the property covered by this Security Instrument; (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note, and (d) the recapture of any payment assistance and subsidy which may be granted to the Borrower by the Lender pursuant to 42 U.S.C. §§ 1472(g) or 1490a. For this purpose, Borrower irrevocably grants and conveys to Lender the following described property located in the County of
          Orange                                              , State of New York:


    SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEEOF MARKED
    SCHEDULE "A"




which has the address of    16 Bruce Street          Port Jervis       ,    , New York   12771
                             [Street]                   [City]                          [ZIP]

("Property Address");


According to the Paperwork Reduction Act of 1996, no persons are required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this collection is 0575-0172. The time required to complete this information collection is estimated to average 15 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.

Page 1 of 6

LENDER: UNITED STATES OF AMERICA ACTING THROUGH THE RURAL HOUSING SERVICE
OR SUCCESSOR AGENCY, UNITED STATED DEPARTMENT OF AGRICULTURE
BORROWER(s): MICHAEL LANOS and JESSICA LANOS
LOAN NO. 0031940785

Parcel I

All that certain plot, piece or parcel of land situate, lying and being in the **City of Port Jervis**, County of **Orange** and State of New York and being more accurately bounded and described as follows:

BEGINNING at a nail found in the southwesterly line of Bruce Street at the northwesterly most corner of other lands of DeCasal Properties, LLC and also being the northeasterly corner of the herein described parcel and also being South 44 East, 75.00 feet from an iron pipe found; thence from the said point or place of beginning and following along other lands of DeCasal Properties LLC, South 46 degrees 00 minutes 00 seconds West, 96.00 feet to a point; thence along the line of lands of Holley, North 44 degrees 00 minutes 00 seconds West, 35.00 feet to a point; thence along the line of lands of Amaro [dl. 11632 pg. 841], North 46 degrees 00 minutes 00 seconds East, 96.00 feet to a point in the southwesterly line of Bruce Street and being, South 46 West, 0.55 feet from an iron pipe found; thence along the southwesterly line of Bruce Street, South 44 degrees 00 minutes 00 seconds East, 35.00 feet to the point or place of BEGINNING.

- continued -

SCHEDULE "A"
Page 1 of 2

LENDER: UNITED STATES OF AMERICA ACTING THROUGH THE RURAL HOUSING SERVICE
   OR SUCCESSOR AGENCY, UNITED STATED DEPARTMENT OF AGRICULTURE
BORROWER(s): MICHAEL LANOS and JESSICA LANOS
LOAN NO. 0031940785

Parcel II

All that certain lot, piece or parcel of land situate, lying and being in the **City of Port Jervis**, County of **Orange**, State of New York and being more accurately bounded and described as follows:

BEGINNING at a nail found in the southwesterly line of Bruce Street at the northeasterly most corner of other lands of DeCasal Properties, LLC and also being the northwesterly corner of the herein described parcel and also being South 44 East, 75.00 feet from an iron pipe found; thence from the said point or place of beginning and following along the southwesterly line of Bruce Street, South 44 degrees 00 minutes 00 seconds East, 40.00 feet to a buried nail found; thence along the line of lands of Broadhead, South 46 degrees 00 minutes 00 seconds West, 95.76 feet to an old buried bolt found; thence along the line of lands of Francis M. Conroy Living Trust, North 44 degrees 20 minutes 40 seconds West, 40.00 feet to a point; thence along the line of other lands of DeCasal Properties, LLC, North 46 degrees 00 minutes 00 seconds East, 96.00 feet to the point or place of BEGINNING.

SCHEDULE "A"
Page 2 of 2

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures which now or hereafter are a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. **Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; and (d) yearly flood insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 *et seq.* ("RESPA"), unless another law or federal regulation that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held by a federal agency (including Lender) or in an institution whose deposits are insured by a federal agency, instrumentality, or entity. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If Lender shall acquire or sell the Property after acceleration under paragraph 22, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. **Application of Payments.** Unless applicable law or Lender's regulations provide otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied in the following order of priority: (1) to advances for the preservation or protection of the Property or enforcement of this lien; (2) to accrued interest due under the Note; (3) to principal due under the Note; (4) to amounts required for the escrow items under paragraph 2; (5) to late charges and other fees and charges.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Page 2 of 6

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Lender has agreed in writing to such lien or Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within ten (10) days of the giving of notice.

Borrower shall pay to Lender such fees and other charges as may now or hereafter be required by regulations of Lender, and pay or reimburse Lender for all of Lender's fees, costs, and expenses in connection with any full or partial release or subordination of this instrument or any other transaction affecting the Property.

   **5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurer providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, at Lender's option Lender may obtain coverage to protect Lender's rights in the Property pursuant to paragraph 7.

All insurance policies and renewals shall be in a form acceptable to Lender and shall include a standard mortgagee clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within thirty (30) days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The thirty (30) day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If after acceleration the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

   **6. Preservation, Maintenance, and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall maintain the improvements in good repair and make repairs required by Lender. Borrower shall comply with all laws, ordinances, and regulations affecting the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

   **7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender is not required to do so. Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

8. **Refinancing.** If at any time it shall appear to Lender that Borrower may be able to obtain a loan from a responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes, Borrower will, upon the Lender's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby in full.

9. **Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

10. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured hereby immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within thirty (30) days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower and any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. **Governing Law; Severability.** This Security Instrument shall be governed by federal law. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable. This instrument shall be subject to the present regulations of Lender, and to its future regulations not inconsistent with the express provisions hereof. All powers and agencies granted in this instrument are coupled with an interest and are irrevocable by death or otherwise; and the rights and remedies provided in this instrument are cumulative to remedies provided by law.

15. **Borrower's Copy.** Borrower acknowledges receipt of one conformed copy of the Note and of this Security Instrument.

16. **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is leased for a term greater than three (3) years, leased with an option to purchase, sold, or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this

Security Instrument.

**17. Nondiscrimination.** If Borrower intends to sell or rent the Property or any part of it and has obtained Lender's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower, will refuse to negotiate for the sale or rental of the Property or will otherwise make unavailable or deny the Property to anyone because of race, color, religion, sex, national origin, handicap, age, or familial status, and (b) Borrower recognizes as illegal and hereby disclaims and will not comply with or attempt to enforce any restrictive covenants on dwelling relating to race, color, religion, sex, national origin, handicap, age or familial status.

**18. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 13 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made.

**19. Uniform Federal Non-Judicial Foreclosure.** If a uniform federal non-judicial foreclosure law applicable to foreclosure of this security instrument is enacted, Lender shall have the option to foreclose this instrument in accordance with such federal procedure.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any hazardous substances on or in the Property. The preceding sentence shall not apply to the presence, use, or storage on the Property of small quantities of hazardous substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any federal, state, or local environmental law or regulation.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any hazardous substance or environmental law or regulation of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any hazardous substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with applicable environmental law and regulations.

As used in this paragraph "hazardous substances" are those substances defined as toxic or hazardous substances by environmental law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "environmental law" means federal laws and regulations and laws and regulations of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**21. Cross Collateralization.** Default hereunder shall constitute default under any other real estate security instrument held by Lender and executed or assumed by Borrower, and default under any other such security instrument shall constitute default hereunder.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. SHOULD DEFAULT** occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should the parties named as Borrower die or be decreed incompetent, or should any one of the parties named as Borrower be discharged in bankruptcy or declared an insolvent, or make an assignment for the benefit of creditors, Lender, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any indebtedness to Lender hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in like cases, (d) foreclose this instrument as provided herein or by law, and (e) enforce any and all other rights and remedies provided herein or by present or future laws.

**23.** The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to Lender secured hereby, (d) inferior liens of record required by law or a competent court to be so paid, (e) at Lender's option, any other indebtedness of Borrower owing to Lender, and (f) any balance to Borrower. At foreclosure or other sale of all or any part of the property, Lender and its agents may bid and purchase as a stranger and may pay Lender's share of the purchase price by crediting such amount on any debts of Borrower owing to Lender, in the order prescribed above.

**24.** Borrower agrees that Lender will not be bound by any present or future state laws, (a) providing for valuation, appraisal, homestead or exemption of the Property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action may be brought, (c)

prescribing any other statue of limitations, (d) allowing any right of possession or, (e) limiting the conditions which Lender may be regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower expressly waives the benefit of any such state law. Borrower hereby relinquishes, waives, and conveys all rights, inchoate or consummate, of descent.

**25. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box]

☐ Condominium Rider   ☐ Planned Unit Development Rider   ☐ Other(s) [specify]

Witnesses:    FEDERAL AGENCY _ TAX EXEMPT

_____     _____(Seal)
                                     MICHAEL LANOS        Borrower

_____     _____(Seal)
                                     JESSICA LANOS        Borrower

## ACKNOWLEDGMENT

STATE OF NEW YORK    }
                     } SS:
COUNTY OF SULLIVAN   }

On the __16th__ day of __March__ in the year __2005__, before me, the undersigned, a notary public in and for said State, personally appeared __MICHAEL LANOS & JESSICA LANOS__, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose names(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s) or the person on behalf of which the individual(s) acted, executed the instrument.

BRIAN PATRICK ROURKE
Notary Public, State of New York
County Clerk's #2009
Commission Expires March 22, 20__

_____
Notary Public

Page 6 of 6

STATE OF NEW YORK
                                             SS:
COUNTY OF ONONDAGA

    Douglas R. Westfall being duly sworn, deposes and says: That I am a Single Family Housing Underwriter for the United States of America, Acting through Rural Development, formerly Farmers Home Administration, U.S. Department of Agriculture.

    That Rural Development is an agency of the United States within the U.S. Department of Agriculture for the purpose of administrating Government loan programs, as a Government entity, it is exempt from the payment of mortgage taxes. Specific exemptions are also codified at 7USC 1984 (1) and 42 USC 1490 h (1).

    This affidavit is made to support request for exemption from mortgage tax.

_____
Douglas R. Westfall

Sworn to before me this

11th Day of March, 2005

_____
NOTARY PUBLIC